674 P.2d 1121
**STATE of New Mexico, Petitioner,**

v.

**David KROUT and Richard
Wiltse, Respondents.**

**No. 15250.**

Supreme Court of New Mexico.

Jan. 12, 1984.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for petitioner.

Janet Clow, Chief Public Defender, Ellen Bayard, Asst. Appellate Defender, Santa Fe, for respondents.

OPINION

RIORDAN, Justice.

Respondents David Krout and Richard Wiltse (Defendants) were indicted for possession with intent to distribute marijuana, conspiracy to distribute marijuana, and possession of peyote. The trial court granted motions to suppress all evidence seized by the State of New Mexico (State) during the search. The State appealed and the Court of Appeals affirmed. We granted certiorari and reverse the Court of Appeals.

The issue we address is whether the trial court erred in suppressing evidence seized pursuant to a warrant that was based on the observations of a police officer who previously went to the premises to execute a valid arrest warrant.

Two criminal complaints were filed against Harlow H. Harmon (Harmon) in the Magistrate Court of Taos County, New Mexico (Magistrate), for two counts of assault, one count of battery, and one count of criminal damage to property. An arrest warrant for Harmon was issued by the Magistrate. Thereafter, Officer Rodney R.

Moody of the New Mexico State Police (Officer Moody) was informed by at least two persons that Harmon lived at a place known as the Parker or Wiltse premises in Carson, New Mexico.

Officer Moody drove to the premises which sits on approximately forty acres of land, and upon pulling into the driveway noticed several abandoned cars. Officer Moody parked his car near the main residence and proceeded to a door on the west edge of the residence. Officer Moody testified that he recalled seeing a note on the door indicating that someone would be back in a half-hour. Officer Moody knocked on the door and called out. No response was given.

Officer Moody then walked around to the south side of the residence where there were windows, one of which had its bottom half open. Officer Moody walked to the window, bent over, and looked in. He then called into the residence. Again, there was no response; however, while looking through the window, Officer Moody noticed what appeared to be marijuana plants.

Officer Moody then turned around and noticed a second building, a greenhouse, on the premises, approximately three hundred yards away. He proceeded to a door of the greenhouse that was padlocked from the outside. He walked around the greenhouse and found a smaller door that was wired shut from the outside. Officer Moody knocked and received no response. He noticed a crack next to the door, looked through the crack into the greenhouse, and saw several rows of small plants which appeared to be marijuana.

Based upon this information and his observations, a search warrant was issued by the Magistrate. On appeal, there is no challenge to the sufficiency of Officer Moody's affidavit for search warrant, only the manner in which probable cause was obtained. The search warrant was executed on both the residence and the greenhouse, both of which were later ascertained to be owned by Defendant Wiltse. Thereafter, Defendants were indicted. Approximately 1,300 marijuana plants were found in the greenhouse. Peyote was found in a bureau drawer in the main residence.

After a hearing on Defendants' motions to suppress the evidence, the trial court specifically found that Officer Moody "did not have lawful authority sufficient to allow his view through the cracks of the greenhouse door", and therefore ordered that all evidence obtained as a result of the search and seizure be suppressed.

On review, the Court of Appeals determined that when the officer left the front door of the residence he had no reason to believe that Harmon would be found anywhere on the premises, and that "once the officer left the front door, his authority to search about the premises was no longer that of an officer, armed with an arrest warrant searching the places where there was reason to believe the suspect was." We disagree with the Court of Appeals' conclusion.

■ We recognize that for Fourth Amendment purposes, an arrest warrant supported by probable cause carries with it limited authority to enter a dwelling in which a suspect lives when there is reason to believe that the suspect is within. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). We further recognize that, "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (citations omitted). In other words, "when a law enforcement officer is able to detect something by utilization of one or more of his senses *while lawfully present* at the vantage point where those senses are used, that detection does not constitute a 'search' within the meaning of the Fourth Amendment." 1 W. LaFave, Search & Seizure, A Treatise on the Fourth Amendment, § 2.2 at 240 (1978) (emphasis added); *e.g. Rodriquez v. State,* 91 N.M. 700, 580 P.2d 126 (1978); *State v. Aragon,* 89 N.M. 91, 547 P.2d 574 (Ct.App.), *cert. denied,* 89 N.M. 206, 549 P.2d 284 (1976).

In the present case, the arrest warrant for Harmon was prior justification for Officer Moody's lawful entry onto the Parker or Wiltse premises. Officer Moody had the right to enter the premises or any part that might *reasonably* produce the subject of the warrant. The record indicates that the premises were on a large rural piece of property that had both a greenhouse and a residence. After Officer Moody concluded that no one was at the residence, he noticed the greenhouse. Officer Moody testified that the only reason he went to the greenhouse was to see if Harmon was there. There is no evidence to refute this testimony. Officer Moody's action in looking through the crack in the door of the greenhouse for Harmon was entirely reasonable under the circumstances, and what he observed falls within the plain view exception to the warrant requirement. The incriminating nature of the evidence was immediately apparent. There is no evidence to indicate that Officer Moody was using the arrest warrant as a subtrafuge to search the premises. Officer Moody had legitimate authority under the arrest warrant to go to the greenhouse, while looking for Harmon, to see if Harmon was there. We therefore determine that Officer Moody could properly observe anything in plain view without violating Defendants' reasonable expectation of privacy, and that this information and his observations could properly be relied upon by the Magistrate.

The Court of Appeals' decision is reversed. This case is remanded to the trial court for consideration of other suppression issues not ruled upon by the trial court.

IT IS SO ORDERED.

FEDERICI, C.J., and PAYNE and STOWERS, JJ., concur.

DAN SOSA, Jr., Senior Justice, not participating.